J-S12024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:<br>A.E.Y., A MINOR | IN THE SUPERIOR COURT<br>OF<br>PENNSYLVANIA |
| v. | |
| APPEAL OF: C.Y. | |
| | No. 1716 MDA 2017 |

Appeal from the Order, October 6, 2017,
in the Court of Common Pleas of Luzerne County,
Orphans' Court at No(s): A-8562

BEFORE: LAZARUS, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: OCTOBER 17, 2018**

C.Y. ("Mother") appeals from the order involuntarily terminating her parental rights to her 14-year-old daughter, A.E.Y. ("Child"), pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2511(a)(1), (2) and (b).[1] Concluding that her appeal is frivolous, Mother's counsel has filed an application to withdraw. But before we could address either the merits of the appeal or the application to withdraw, we remanded the matter back to the orphans' court with instruction that the guardian *ad litem* ("GAL") ascertain Child's preferred outcome, in accordance with *In Re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017). We specified that the court may re-enter the order – and Mother's counsel may

---

[1] The orphans' court also terminated the parental rights of W.Z. ("Father"), who does not appeal.

re-file her application – if it was discovered that Child's preference aligned with the result of the termination hearing.

On September 4, 2018, the orphans' court filed a supplemental opinion, noting Child's preferred outcome was to have her Mother's rights terminated so that she may be adopted by the petitioning paternal grandmother and step-grandfather ("Grandparents").[2]  As such, we may now proceed with Mother's appeal.

We begin by reiterating the factual history.

Child has been residing in her Grandparents' care since she was three years old.  *See* Orphan's Court Opinion, 12/4/17, at 6.  The local children and youth agency had originally removed Child from Mother in 2006, because Mother was using heroin.  *Id.,* at 9.  Mother also admitted to previously using cocaine. *Id.*  When Child was three years old, she was found dependent and placed with Grandparents. *Id.,* at 6.

Approximately two years after Child's placement, in 2008, the trial court entered an order that discontinued the dependency litigation and conferred custody of Child to Grandparents; Mother was permitted to enjoy only supervised custody.  *Id.*  Afterward, the contact between Mother and Child was sporadic.  *Id.*  In 2012, Mother filed for custody modification and was awarded partial physical custody of Child.  *Id.*  Pursuant to the modified order,

---

[2] The orphans' court noted that the GAL did, in fact, meet with the child before and after the termination hearing and that the child's preference was the same throughout.

Mother was entitled to have overnight custody. *Id.* But throughout the following year, Mother was not consistent with her exercise of custody; e.g., she often did not answer the door when Grandmother transported Child to Mother's home. *Id.*, at 7. In 2013, Mother's partial custody reverted back to supervised visitation. In October 2014, Mother stopped contacting Child completely. *Id.*

On June 6, 2017, Grandparents filed a petition to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2) and (b) of the Adoption Act. The orphans' court conducted hearings on October 3 and October 5, 2017. At the hearings, Susan Maza, Esquire, represented Child's best interests as a court-appointed guardian *ad litem* ("GAL"). Mother was also represented by counsel. On October 6, 2017, the orphans' court entered an order terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), and (b). This timely-filed appeal followed.

On January 5, 2018, Mother's counsel filed an application to withdraw as counsel and an *Anders*[3] brief. Initially, we note that Mother's counsel filed an *Anders* brief and a petition to withdraw. Before reaching the merits of Mother's appeal, we must first address counsel's request to withdraw. *See Commonwealth v. Rojas*, 847 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'")

---

[3] *See Anders v. California*, 386 U.S. 738 (1967).

(quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)). "In *In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights." *In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014). To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court to leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette,* 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an *Anders* brief must comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and

> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the instant matter, counsel has filed an application to withdraw, certifying that he has reviewed the case and determined that Mother's appeal is wholly frivolous. Counsel has also filed a brief that includes a summary of the history and facts of the case, issues raised by Mother, counsel's assessment of why those issues are frivolous, with citations to relevant legal authority. Counsel has included with his brief a copy of his letter to Mother, advising her that she may obtain new counsel or raise additional issues *pro se.* Accordingly, counsel has substantially complied with the requirements of *Anders* and *Santiago*. *See Commonwealth v. Reid*, 117 A.3d 777, 781 (Pa. Super. 2015) (observing that substantial compliance with the *Anders* requirements is sufficient). We, therefore, may proceed to review the issues outlined in the *Anders* brief. In addition, we must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's *Anders* lists the following questions on appeal:

> (1) Did the orphans' court abuse its discretion, commit an error of law, and/or there was insufficient evidentiary support in terminating the parental rights of the Mother of A.E.Y., as the grounds pursuant to 23 Pa.C.S.A. § 2511(a)(1) and 23 Pa.C.S.A. § 2511(a)(2) were not established by clear and convincing evidence, and such

granting of a petition to terminate parental rights was against the weight of the evidence presented by the parties.

(2) Did the orphans' court abuse its discretion, commit an error of the law, and/or there was insufficient evidentiary support in terminating the parental rights of the Natural Mother of A.E.Y., pursuant to 23 Pa.C.S.A. § 2511(a)(1) and 23 Pa.C.S.A. § 2511(a)(2) as the orphans' court did not properly weight Natural Mother's allegations that the child's caretakers blocked and/or thwarted Mother's attempts at contact with the minor child during the applicable statutory time frames.

(3) Did the orphans' court abuse its discretion, commit an error of law, and/or there was insufficient evidentiary support for the court's decision that the best needs and welfare of the minor child A.E.Y. would be served by terminating Mother's parental rights as required by 23 Pa.C.S.A. § 2511(b).

Mother's Brief, at 3.

Our standard of review regarding orders terminating parental rights is settled:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

***In re S.H.,*** 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that

the asserted grounds for seeking the termination of parental rights are valid. *Id*. at 806. We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C. & J.R.C.,* 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.,* 855 A.2d 68, 73–74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003).

The termination of parental rights is controlled by 23 Pa.C.S.A. § 2511. Under this statute, the trial court must engage in a bifurcated process. The focus initially centers on the conduct of the parent under Section 2511(a). *See In the Interest of B.C.,* 36 A.3d 601 (Pa.Super.2012).

In this case, the trial court terminated Mother's parental rights pursuant to §§ 2511(a)(1) and (a)(2), which provide as follows:

**§ 2511. Grounds for involuntary termination**

> **(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing

> parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. §§ 2511(a)(1), (2),

Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." **In re B.L.W.,** 843 A.2d 380, 384 (Pa. Super. 2004).

We address Mother's first two issues simultaneously:

Child is 14 years old. She has resided with her Grandparents for 11 years, or, put another way, for just about as long as she can remember. N.T. 10/3/17, at 9. She came into her Grandparents' care at age 3 when Luzerne County's Children and Youth Services filed a dependency action against Mother. **Id.**, at 12. The dependency action was discontinued two years later when a final custody order granted Grandparents' primary custody of Child. **Id.** Thereafter, Mother's contact with Child was described as "sporadic." Specifically, Mother would check in on her daughter, but months would go by without contact. **Id.**, at 14. Since the dependency action closed, there have been several custody orders. The current custody order awarded Grandparents legal custody and restricted Mother's time to only supervised visits. But Mother was not consistent with these visits; indeed, the last time

she saw Child was October 2014 – three years prior to the termination hearing.

It is clear that Mother has caused Child to go without essential parental care, per § 2511(a)(2). Similarly, Mother has evidenced a refusal or failure to perform parental duties. For instance, Grandmother testified that she and her husband fulfill certain quintessential parenting hallmarks. For example, they take Child to her medical appointments, provide her with insurance, enroll her in school, and attend parent-teacher conferences. *Id.*, at 23-25. But this is not all they do. In actuality, the Grandparents do everything. We may infer, on account of Mother's absence for the three years prior to the termination hearing, that Grandparents have provided for every parental duty under the sun. They have been significantly involved with Child during the previous decade.

Mother argues that Grandparents' prevented her from contacting Child. Mother also points to Grandmother's testimony that she never "invited" Mother to participate in medical visits. *Id.*, at 32; *see also Anders* Brief, at 6. She argues that Grandparents never asked Mother for money to pay for Child's tuition. N.T., at 32; *see also Anders* Brief, at 6-7. Mother notes that Child's phone number changed so she was unable to contact her. N.T., at 29; *see also Anders* Brief, at 6.

Grandmother testified that she never prevented Mother from contacting her daughter. N.T., at 30. Moreover, she testified that while Child got a new phone, and she disconnected her landline, her and her husband's cell phone

numbers never changed. *Id.*, at 29; 13. Regardless of whether Mother had their phone number, there is no excuse for her failure to contact Child. Mother had available other avenues; e.g., she could have petitioned the court to enforce her supervised custody. Mother has struggled with sobriety and homelessness during the course of this child's life. *See id.,* at 98; 17. The record is clear that she would not or could not attempt reunification. As such, Grandparents established clear and convincing evidence that termination under §§ 2511(a)(1) and (a)(2) was warranted.

Having met the first part of the bifurcated termination analysis, we next determine whether termination would serve the children's needs and welfare under section 2511(b).

Section 2511(b) provides, in pertinent part:

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

Pursuant to Section 2511(b), the trial court must take into account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.,* 761 A.2d 1197, 1202 (Pa. Super. 2000) (*en banc*). In *In re C.M.S.,* 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated,

- 10 -

"Intangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." In addition, we instructed that the orphans' court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *In re K.Z.S.,* 946 A.2d 753, 763 (Pa. Super. 2008).

While a parent's emotional bond with his or her child is a major aspect of the Subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors the court must consider when determining the best interest of the child. The mere existence of an emotional bond does not preclude the termination of parental rights. Rather, the orphans' court must examine the status of the bond to determine whether termination "would destroy an existing, necessary and beneficial relationship." As we explained in *In re N.A.M.*:

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

33 A.3d 95, 103 (Pa. Super. 2011) (*citing In re A.S.*, 11 A.3d 473, 483 (Pa. Super. 2010). Moreover, we have found termination to be proper despite the existence of a parent-child bond when the bond is not necessarily meaningful

- 11 -

or healthy. *In re M.M.*, 106 A.3d 114, 120 (Pa. Super. 2016); *see In re T.S.M.,* 71 A.3d 251, 268 (Pa. 2013) (stating that the strong parent-child bond was an unhealthy one that could not by itself serve as grounds to prolong foster care drift); *see also In re L.M.,* 923 A.2d 505, 512 (Pa. Super. 2007) (holding that a parent's love of her child, alone, does not preclude a termination).

Grandmother testified that she and her husband believe Child is bonded to them. *Id.*, at 78. She testified that she does not know what the future will hold, but Grandmother also concluded that as far as the here and now were concerned, Child does not know either of her parents. *Id.*, at 79. She testified that there is no relationship between Mother and Child. *Id.*

Bond aside, we cannot ignore Mother's lengthy absence from Child's life. Because Mother would not or could not be a part of the Child's life, she prevented herself from providing Child with necessary love, comfort, security or stability. Child was forced to go without. Luckily, she appears to have found those intangibles in her relationship with Grandparents.

Paradoxically, termination proceedings usually do not involve the testimony from the subject children. As our previous remand makes clear, however, they are still stakeholders and their preferred outcome must be ascertained. *In Interest of A.E.Y.*, 2018 WL 3372730 (Pa. Super. 2018). To that end, we also acknowledge that, at 14 years of age, Child is among the older class of children who must participate in these types of proceedings. With age comes maturity; the preference of an older child is much weightier

than that of a small child. Here, Child made it known that she wished for her parents' rights to be terminated so that she may be adopted by Grandparents. We must not discount Child's own ideas about what is in her best interests. The record is clear that termination best serves Child's needs and welfare.

The evidence overwhelmingly supported the termination of Mother's parental rights. After conducting a full examination of all the proceedings as required under **Anders**, we discern no non-frivolous issues to be raised on appeal. **See Commonwealth v. Flowers**, *supra*, 113 A.3d at 1250. Therefore, we conclude that the orphans' court did not abuse its discretion when it granted Grandparents' petition to terminate Mother's rights.

Order affirmed. Petition to withdraw granted. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/17/2018